| Fill in this information to identify the case |
| --- |
| United States Bankruptcy Court for the: |
| Southern ___ District of ___ New York ___ <br> (State) |
| Case number (*If known*): _____  Chapter ___ 11 ___ |

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy   04/16

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
| --- | --- | --- |
| 1. | **Debtor's name** | DF Insurance Agency LLC |

| | | |
| --- | --- | --- |
| 2. | **All other names debtor used in the last 8 years** | DTF Insurance Agency LLC |
| | | DTFS Insurance Agency LLC |
| | Include any assumed names, trade names, and *doing business as* names | |

| | | |
| --- | --- | --- |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 30-0936918 |

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
| --- | --- |
| 345    St. Peter Street <br> Number    Street | 3000    Bayport Drive, Suite 985 <br> Number    Street |
| | P.O. Box |
| Saint Paul    Minnesota    55102 <br> City    State    ZIP Code | Tampa    Florida    33607 <br> City    State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Ramsey County <br> County | |
| | Number    Street |
| | City    State    ZIP Code |

| | | |
| --- | --- | --- |
| 5. | **Debtor's website** (URL) | www.ditechholding.com |

| | | |
| --- | --- | --- |
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) <br> ☐ Partnership (excluding LLP) <br> ☐ Other. Specify: _____ |

Debtor  DF Insurance Agency LLC                                                    Case number (if known) _____
       Name

---

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the above

B. *Check all that apply:*

☐ Tax- entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

5242

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7
☐ Chapter 9
☒ Chapter 11. *Check all that apply:*

  ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes    District _____  When _____  Case number _____
                                      MM/ DD/ YYYY
         District _____  When _____  Case number _____
                                      MM / DD/ YYYY

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes    Debtor    See attached Schedule 1          Relationship _____
         District    Southern District of New York   When    February 11, 2019
         Case number, if known _____            MM / DD/ YYYY

---

**11. Why is the case filed in this district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

| Number | Street | | |
|---|---|---|---|

_____

| City | State | ZIP Code |
|---|---|---|

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact Name _____

Phone _____

---

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors**

**(on a consolidated basis)**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☒ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated assets**

**(on a consolidated basis)**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☒ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

**(on a consolidated basis)**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☒ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

Debtor  DF Insurance Agency LLC _____    Case number (if known) _____
        Name

| | Request for Relief, Declaration, and Signatures |
|---|---|

**WARNING** — Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17.  Declaration and signature of authorized representative of debtor**

- The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

- I have been authorized to file this petition on behalf of the debtor.

- I have examined the information in this petition and have a reasonable belief that the information is true and  correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   February 11, 2019
              MM/ DD /YYYY

✗  /s/ Kimberly Perez _____    Kimberly Perez _____
   Signature of authorized representative of debtor    Printed name

   Senior Vice President and Chief
   Accounting Officer _____
   Title

**18. Signature of attorney**

✗  /s/ Ray C. Schrock, P.C. _____    Date  February 11, 2019 _____
   Signature  of attorney for  debtor                 MM / DD / YYYY

   Ray C. Schrock, P.C. _____
   Printed Name

   Weil, Gotshal & Manges LLP _____
   Firm Name

   767 Fifth Avenue _____
   Number        Street

   New York _____    New York _____    10153 _____
   City                              State                              ZIP Code

   (212) 310–8000 _____    ray.schrock@weil.com _____
   Contact phone                        Email address

   4860631 _____    New York _____
   Bar Number                    State

## Schedule 1

### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the affiliated entities listed below, including the debtor in this chapter 11 case, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the **"Court"**).  A motion will be filed with the Court requesting that the chapter 11 cases of the entities listed below be consolidated for procedural purposes only and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

| COMPANY | CASE NUMBER | DATE FILED | DISTRICT | JUDGE |
|---|---|---|---|---|
| Green Tree Credit LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Ditech Holding Corporation | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| DF Insurance Agency LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Ditech Financial LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Green Tree Credit Solutions LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Green Tree Insurance Agency of Nevada, Inc. | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Green Tree Investment Holdings III LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Green Tree Servicing Corp. | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Marix Servicing LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Mortgage Asset Systems, LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| REO Management Solutions, LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Reverse Mortgage Solutions, Inc. | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Walter Management Holding Company LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |
| Walter Reverse Acquisition LLC | 19-_____( ) | February 11, 2019 | S.D.N.Y. | Pending |

## Exhibit A

**Resolutions of the Board of Directors**

## RESOLUTIONS OF THE
## THE BOARD OF DIRECTORS OF
## DITECH HOLDING CORPORATION

### February 10, 2019

**WHEREAS**, Ditech Holding Corporation (the "Company"), with the assistance of financial and legal advisors, has been conducting a review of strategic alternatives, including the potential sale of the Company, a sale of all or a portion of the Company's assets, and/or a recapitalization of the Company;

**WHEREAS**, the Board of Directors (the "Board") of the Company previously established a special committee of the Board composed of independent and disinterested directors (the "Special Committee") to assist management of the Company in evaluating, exploring and negotiating strategic alternatives, and recommending to the Board whether to approve any such potential transaction;

**WHEREAS**, upon recommendation of the Special Committee, the Board previously approved the form, terms and provisions of, and the execution, delivery, and performance of, and, on February 8, 2019, the Company entered into, the restructuring support agreement (the "RSA") with an ad hoc group of lenders (the "Term Loan Lenders") holding more than 75% of the aggregate total principal amount of the Company's senior secured first lien term loan, borrowed pursuant to the Second Amended and Restated Credit Agreement, dated as of February 9, 2018 (as amended, supplemented or otherwise modified, the "Credit Agreement") establishing the Term Loan Lenders' support for a prearranged chapter 11 plan of reorganization;

**WHEREAS**, upon recommendation of the Special Committee, the Board previously approved, and on February 8, 2019, the Company entered into, the Commitment Letter (the "Commitment Letter"), by and among the Company as Guarantor, its wholly-owned direct subsidiaries Reverse Mortgage Solutions, Inc. ("RMS") and Ditech Financial LLC ("Ditech") as Sellers, Barclays Bank PLC ("Barclays") as Administrative Agent and as Buyer and Nomura Corporate Funding Americas, LLC ("Nomura") as Buyer (together with Barclays in its capacity as Buyer, the "Buyers"), pursuant to which the Buyers committed to provide new debtor-in-possession financing in an amount of up to $1.9 billion on terms and subject to conditions set forth in the Commitment Letter and the term sheet attached thereto;

**WHEREAS**, the Board has met on various occasions to review and has had the opportunity to ask questions about the materials presented by the management and the legal and financial advisors of the Company regarding the liabilities and liquidity of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's business; and

**WHEREAS**, in connection therewith, the Board desires to approve the following resolutions.

**NOW, THEREFORE, BE IT HEREBY**

<u>**Commencement of Chapter 11 Cases**</u>

        **RESOLVED**, that, upon recommendation of the Special Committee, the Board has determined, after consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest to approve and authorize the filing of petitions by the Company and certain of its subsidiaries, including RMS and Ditech, seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and be it further

        **RESOLVED**, that upon recommendation of the Special Committee, the Board has determined, after consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest that the Company and its advisors prepare, finalize and file, as appropriate, the prearranged chapter 11 plan of reorganization (the "Plan") and related disclosure statement (the "Disclosure Statement") consistent with the terms of the RSA;

        **RESOLVED**, that any officer of the Company (each, an "Authorized Officer"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to execute and file in the name and on behalf of the Company all petitions, schedules, motions, lists, applications, pleadings, and other papers in the Bankruptcy Court, and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers and other professionals, and to take and perform any and all further acts and deeds which such Authorized Officer deems necessary, proper, or desirable in connection with the chapter 11 cases (the "Chapter 11 Cases"), the Plan and the Disclosure Statement, including, without limitation, negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments in connection with the transactions and professional retentions set forth in these resolutions, with a view to the successful prosecution of the Chapter 11 Cases; and be it further

<u>**Debtor-in-Possession Financing**</u>

        **RESOLVED**, that in connection with the Chapter 11 Cases, and as previously authorized and agreed to by Ditech and RMS in connection with the Commitment Letter, and upon recommendation of the Special Committee, it is in the best interest of the Company, Ditech, RMS, RMS REO CS, LLC ("RMS REO CS"), RMS REO BRC, LLC ("RMS REO BRC") and RMS REO BRC II, LLC ("RMS REO BRC II") to engage in, and the Company, Ditech, RMS, RMS REO CS, RMS REO BRC and RMS REO BRC II will obtain benefits from, the financing transactions contemplated by the agreements listed on <u>Schedule A</u> hereto and any and all of the other agreements, including, without limitation, any other guarantees, certificates, documents and instruments authorized, executed, delivered, reaffirmed, verified and/or filed in connection with the Debtor-in-Possession Financing (as defined below) (together with the transaction documents listed on <u>Schedule A</u>, collectively, the "DIP Financing Documents"), which, subject to the approval of the Bankruptcy Court, will provide the Company, Ditech, RMS and RMS REO BRC II up to $1.9 billion in available warehouse financing, which is necessary

and appropriate for the conduct, promotion and attainment of the business of the Company and its subsidiaries, including Ditech, RMS and RMS REO BRC II (the "Debtor-in-Possession Financing") (capitalized terms used in this section with respect to Debtor-in-Possession Financing and not otherwise defined herein shall have the meanings ascribed to such terms in the Commitment Letter or the term sheet attached thereto); and be it further

RESOLVED, that the Company's performance of its obligations under the DIP Financing Documents, including the borrowings and guarantees contemplated thereunder, are hereby, in all respects confirmed, ratified and approved; and be it further

RESOLVED, that any Authorized Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to negotiate and approve the terms, provisions of and performance of, and to prepare, execute and deliver the DIP Financing Documents, on substantially the same terms and conditions presented to the Board, in the name and on behalf of the Company under its corporate seal or otherwise, and such other documents, agreements, instruments and certificates as may be required by the Administrative Agent or required by the DIP Financing Documents; and be it further

RESOLVED, that any Authorized Officer is hereby authorized, as part of the adequate protection to be provided to the lenders and administrative agent under the Credit Agreement, to grant replacement security interests in, and replacement liens on, any and all property of the Company as collateral pursuant to the Bankruptcy Court's orders to secure all of the obligations and liabilities of the Company thereunder, and to authorize, execute, verify, file and/or deliver to the administrative agent, on behalf of the Company, all agreements, documents and instruments required by the lenders or the administrative agent under the Credit Agreement in connection with the foregoing; and be it further

RESOLVED, that any Authorized Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to take all such further actions including, without limitation, to pay all fees and expenses, in accordance with the terms of the DIP Financing Documents, which shall, in such Authorized Officer's judgment, be necessary, proper or advisable to perform the Company's obligations under or in connection with the DIP Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it further

RESOLVED, that any Authorized Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of any of the DIP Financing Documents which shall, in such Authorized Officer's sole judgment, be necessary, proper or advisable; and be it further

**Retention of Advisors**

RESOLVED, that, upon recommendation of the Special Committee, in connection with the Chapter 11 Cases, any Authorized Officer, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to employ and retain all assistance by

legal counsel, accountants, financial advisors, investment bankers and other professionals, on behalf of the Company, which such Authorized Officer deems necessary, appropriate or advisable in connection with, or in furtherance of, the Chapter 11 Cases, with a view to the successful prosecution of the Chapter 11 Cases (such acts to be conclusive evidence that such Authorized Officer deemed the same to meet such standard); and be it further

RESOLVED, that the firm of Houlihan Lokey Capital, Inc., located at 10250 Constellation Blvd., 5th Floor, Los Angeles, California 90067, is hereby retained as investment banker for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

RESOLVED, that the law firm of Weil, Gotshal & Manges LLP, located at 767 Fifth Avenue, New York, NY 10153, is hereby retained as counsel for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

RESOLVED, that the firm of AlixPartners, located at 909 Third Avenue, New York, New York 10022, is hereby retained as financial advisor for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

RESOLVED, that the firm of Epiq Corporate Restructuring, LLC, located at 777 Third Avenue, 12th Floor, New York, New York 10017, is hereby retained as claims, noticing, and solicitation agent and administrative advisor for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**Approval of Actions of Subsidiaries**

RESOLVED, that in the judgment of the Board, it is desirable and in the best interests of certain of the Company's direct and indirect subsidiaries for each such entity or entities to take any and all action, including related to the DIP Financing Documents, Debtor-in-Possession Financing and filing in the Bankruptcy Court, and to execute and deliver all documents, agreements, motions and pleadings as are necessary, proper, or desirable to enable such subsidiary to carry out the DIP Financing Documents, Debtor-in-Possession Financing and filing in the Bankruptcy Court contemplated hereby, including granting any director, officer, or other authorized representative as applicable according to local law, the authority to take action in support thereof; and be it further

**General**

RESOLVED, that any Authorized Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, perform and approve any necessary public disclosures and filings related to, such documents, agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities and certificates as may be required in connection with the Chapter 11 Cases, DIP Financing Documents and Debtor-in-Possession Financing, and to take such other actions that in the judgment of the Authorized Officer shall be or become necessary, proper or desirable in connection therewith; and be it further

4

**RESOLVED**, that any actions taken by any Authorized Officer, for or on behalf of the Company, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof be, and they hereby are, authorized, adopted, approved, confirmed and ratified in all respects as the actions and deeds of the Company.

**Schedule A**

1. Master Refinancing Agreement, dated as of the Closing Date, by and among Barclays, as administrative agent for the Buyers (as defined therein) and other Secured Parties (as defined therein), Barclays and Nomura, each as a Buyer (as defined therein), Barclays Capital Inc. and Nomura Securities International, Inc., each as an MSFTA Counterparty (as defined therein), Ditech and Reverse Mortgage Solutions, Inc., each as a Seller (as defined therein) and RMS REO BRC II, LLC, as REO Subsidiary (as defined therein) (the "Omnibus Agreement").

2. Master DIP Fee Letter, dated as of the Closing Date, among Barclays, as administrative agent, Barclays and Nomura, as Committed Buyers (as defined therein), Ditech, RMS and Ditech Holding Corporation.

3. Master DIP Guaranty, dated as of the Closing Date, made by Guarantor in favor of Barclays, as Administrative Agent, for the benefit of Buyers and the other Buyer Parties (as defined therein).

4. Margin, Setoff and Netting Agreement, dated as of the Closing Date, among Barclays, as Administrative Agent, Barclays Capital, Inc., Nomura Securities International, Inc., Nomura, Ditech, RMS, and RMS REO BRC II, LLC and acknowledged and agreed to by Ditech Holding Corporation.

5. Master Administration Agreement, dated as of the Closing Date, among Barclays, as Administrative Agent for the Buyers and other Secured Parties (as defined therein), Barclays and Nomura, each as a Buyer (as defined therein), Barclays Capital Inc. and Nomura Securities International, Inc., each as a MSFTA Counterparty (as defined therein), Ditech and RMS, each as a Seller (as defined therein), and RMS REO BRC II, LLC as REO Subsidiary (as defined therein).

6. Amended and Restated Master Repurchase Agreement, dated as of the Closing Date, by and among Barclays and Nomura, as Purchasers (as defined therein), Barclays, as Agent (as defined therein), RMS and RMS REO BRC II, LLC.

7. Amended and Restated Pricing Side Letter, dated as of the Closing Date, among Barclays, as Purchaser and Agent, Nomura, as Purchaser, RMS and RMS REO BRC II, LLC.

8. Assignment Agreement, dated as of the Closing Date, between RMS REO CS, LLC and RMS.

9. Assignment Agreement, dated as of the Closing Date, between RMS REO BRC, LLC and RMS.

10. Assignment Agreement, dated as of the Closing Date, between RMS REO BRC II, LLC and RMS.

11. Amended and Restated Custodial Agreement, dated as of the Closing Date, by and among RMS REO BRC II, LLC (the "REO Subsidiary"), RMS, Deutsche Bank National Trust Company, as custodian for Purchasers (as defined therein) and for the REO Subsidiary, Barclays and Nomura, as Purchasers (as defined therein), and Barclays, as Agent (as defined therein).

12. Amended and Restated Deposit Account Control Agreement, dated as of the Closing Date, by and among RMS, Barclays, as Agent (as defined therein), and Wells Fargo Bank, National Association.

13. Amendment No. 1 to the Limited Liability Company Agreement of RMS REO BRC II, LLC, dated as of the Closing Date, entered into by RMS, as the sole member, RMS REO BRC II, LLC, and consented to by Barclays, as Agent.

14. Indenture, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Indenture"), by and among Ditech Agency Advance Trust, as issuer (the "Agency Facility Issuer"), Wells Fargo Bank, N.A. ("Wells Fargo"), as indenture trustee (in such capacity, the "Agency Facility Indenture Trustee"), calculation agent, paying agent and securities intermediary, Ditech, as administrator (in such capacity, the "Agency Facility Administrator") and as servicer (in such capacity, the "Agency Facility Servicer") and Barclays, as administrative agent (in such capacity, the "Agency Facility Administrative Agent") (successor to Credit Suisse First Boston Mortgage Capital LLC, as initial administrative agent).

15. Series 2019-VF1 Indenture Supplement to Agency Facility Indenture, dated as of the Closing Date, by and among the Agency Facility Issuer, the Agency Facility Indenture Trustee (as indenture trustee, calculation agent, paying agent and securities intermediary), the Agency Facility Administrator, the Agency Facility Servicer and the Agency Facility Administrative Agent.

16. Receivables Sale Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Receivables Sale Agreement"), by and among the Agency Facility Servicer, as servicer and as the receivables seller (in such capacity, the "Agency Facility Receivables Seller"), Ditech Agency Advance Depositor LLC, as depositor (the "Agency Facility Depositor") and the Company, as guarantor.

17. Amendment No.1 to the Agency Facility Receivables Sale Agreement, dated as of the Closing Date, by and among the Agency Facility Servicer, the Agency Facility Receivables Seller, the Agency Facility Depositor and the Company, as guarantor.

18. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Depositor and the Agency Facility Receivables Seller.

19. Receivables Pooling Agreement, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Depositor and the Agency Facility Issuer.

20. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Depositor and the Agency Facility Issuer.

21. Administration Agreement, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Issuer and the Agency Facility Administrator.

22. Acknowledgment Agreement with Respect to Servicing Advance Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Acknowledgment Agreement"), by and among the Agency Facility Issuer, the Agency Facility Depositor, the Agency Facility Servicer, the Agency Facility Indenture Trustee, Fannie Mae and the Agency Facility Administrative Agent.

23. Amendment No. 1 to the Agency Facility Acknowledgment Agreement, dated as of April 20, 2018, by and among the Agency Facility Issuer, the Agency Facility Depositor, the Agency Facility Servicer, the Agency Facility Indenture Trustee, Fannie Mae and the Agency Facility Administrative Agent.

24. Amendment No. 2 to the Agency Facility Acknowledgment Agreement, dated as of the Closing Date, by and among the Agency Facility Issuer, the Agency Facility Depositor, the Agency Facility Servicer, the Agency Facility Indenture Trustee, Fannie Mae and the Agency Facility Administrative Agent.

25. Series 2019-VF1 Variable Funding Note Purchase Agreement, dated as of the Closing Date, (the "Agency Facility Note Purchase Agreement"), by and among Ditech, as the Agency Facility Servicer, the Agency Facility Administrator and the Agency Facility Receivables Seller, the Agency Facility Depositor, the Agency Facility Issuer, the Administrative Agent, and Barclays, as a Purchaser Agent ("Agency Facility Purchaser").

26. Ditech Agency Advance Trust Advance Receivables Backed Note, Series 2019-VF1 Note, Number 1 (the "Agency Facility Note"), dated as of the Closing Date, in the name of the Agency Facility Purchaser.

27. Amended and Restated Trust Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Trust Agreement"), by and among the Agency Facility Depositor, Wilmington Trust, National Association, as the owner trustee (in such capacity, the "Agency Facility Owner Trustee"), and the Agency Facility Administrator.

28. Amendment No.1 to the Agency Facility Trust Agreement, dated as of the Closing Date, by and among the Agency Facility Depositor, Wilmington Trust, National Association, the Agency Facility Owner Trustee and the Agency Facility Administrator.

29. Amended and Restated Limited Liability Company Agreement of the Agency Facility Depositor (the "Agency Facility Depositor LLC Agreement"), dated as of February 9, 2018 and effective as of February 12, 2018, by and among Ditech, as the sole economic member of the Agency Facility Depositor and Albert Fioravanti, as the Special Member and Independent Manager of the Agency Facility Depositor.

30. Amendment No. 1 to the Agency Facility Depositor LLC Agreement, dated as of the Closing Date, made by Ditech, as the sole economic member of the Agency Facility Depositor and consented to by Albert Fioravanti, as the Special Member and Independent Manager of the Agency Facility Depositor and Barclays, as sole noteholder.

31. Indenture, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Indenture"), by and among Ditech PLS Advance Trust II, as issuer (the "PLS Facility Issuer"), Wells Fargo Bank, as indenture trustee (in such capacity, the "PLS Facility Indenture Trustee"), calculation agent, paying agent and securities intermediary, Ditech, as administrator (in such capacity, the "PLS Facility Administrator") and as servicer (in such capacity, the "PLS Facility Servicer") and Barclays, as administrative agent (in such capacity, the "PLS Facility Administrative Agent") (successor to Credit Suisse First Boston Mortgage Capital LLC, as initial administrative agent).

32. Series 2019-VF1 Indenture Supplement to PLS Facility Indenture, dated as of the Closing Date (the "PLS Facility Indenture Supplement"), by and among the PLS Facility Issuer, the PLS Facility Indenture Trustee (as indenture trustee, calculation agent, paying agent and securities intermediary), the PLS Facility Administrator, the PLS Facility Servicer and the PLS Facility Administrative Agent.

33. Receivables Sale Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Receivables Sale Agreement"), by and among the PLS Facility Servicer, as servicer and as the receivables seller (in such capacity, the "PLS Facility Receivables Seller"), Ditech PLS Advance Depositor LLC, as depositor (the "PLS Facility Depositor") and the Company, as guarantor.

34. Amendment No.1 to the PLS Facility Receivables Sale Agreement, dated as of the Closing Date, by and among the PLS Facility Servicer, the PLS Facility Receivables Seller, the PLS Facility Depositor and the Company, as guarantor ("PLS Facility Receivables Sale Agreement Amendment").

35. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (the "PLS Facility Assignment of Receivables"), by and between the PLS Facility Depositor and the PLS Facility Receivables Seller.

36. Receivables Pooling Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (the "PLS Facility Receivables Pooling Agreement"), by and between the PLS Facility Depositor and PLS Facility Issuer.

37. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (the "Depositor PLS Facility Assignment of Receivables"), by and between the PLS Facility Depositor and the PLS Facility Issuer.

38. Administration Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (the "PLS Facility Administration Agreement"), by and between the PLS Facility Issuer and the PLS Facility Administrator.

39. Acknowledgment Agreement with Respect to Servicing Advance Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Acknowledgment Agreement"), by and among the PLS Facility Issuer, the PLS Facility Depositor, the PLS Facility Servicer, the PLS Facility Indenture Trustee, Fannie Mae and the PLS Facility Administrative Agent.

40. Series 2019-VF1 Variable Funding Note Purchase Agreement, dated as of the Closing Date, and effective as of the Effective Date (the "PLS Facility Note Purchase Agreement"), by and among Ditech, as the PLS Facility Servicer, the PLS Facility Administrator and the PLS Facility Receivables Seller, the PLS Facility Depositor, the PLS Facility Issuer, the Administrative Agent, and Barclays, as a Purchaser Agent ("PLS Facility Purchaser").

41. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class A-VF1 Note Number 1 (the "PLS Facility Note, Class A"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

42. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class B-VF1 Note Number 1 (the "PLS Facility Note, Class B"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

43. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class C-VF1 Note Number 1 (the "PLS Facility Note, Class C"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

44. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class D-VF1 Note Number 1 (the "PLS Facility Note, Class D"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

45. Amended and Restated Trust Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Trust Agreement"), by and among the PLS Facility Depositor, Wilmington Trust, National Association, as the owner trustee (in such capacity, the "PLS Facility Owner Trustee"), and the PLS Facility Administrator.

46. Amendment No.1 to the PLS Facility Trust Agreement, dated as of the Closing Date, by and among the Agency Facility Depositor, the Agency Facility Owner Trustee and the Agency Facility Administrator.

47. Amended and Restated Limited Liability Company Agreement of the PLS Facility Depositor (the "PLS Facility Depositor LLC Agreement"), dated as of February 9, 2018 and effective as of February 12, 2018, by and among Ditech, as the sole economic member of the PLS Facility Depositor and Albert Fioravanti, as the Special Member and Independent Manager of the PLS Facility Depositor.

48. Amendment No. 1 to the PLS Facility Depositor LLC Agreement, dated as of the Closing Date, made by Ditech, as the sole economic member of the PLS Facility Depositor and consented to by Albert Fioravanti, as the Special Member and Independent Manager of the PLS Facility Depositor and Barclays, as sole noteholder.

49. Pledge Agreement, dated as of the Closing Date, made by the Ditech in favor of Barclays.

50. Master Repurchase Agreement, dated as of the Closing Date, by and among Barclays, as Administrative Agent on behalf of Buyers (as defined therein), Barclays and Nomura, as Buyers (as defined therein), other Buyers party thereto from time to time, and Ditech.

51. Pricing Side Letter, dated the Closing Date, among Barclays, as Administrative Agent for the benefit of Buyers (as defined therein), Barclays and Nomura, as Committed Buyers (as defined therein), and Ditech.

52. Power of Attorney, dated as of the Closing Date, to be entered into by Ditech.

53. Custodial and Disbursement Agreement, dated as of the Closing Date, by and among Barclays and Nomura, as Buyers (as defined therein), Ditech, Barclays, as agent of the Buyers, and Wells Fargo Bank, N.A.

54. Amended and Restated Deposit Account Control Agreement, dated as of the Closing Date, by and among Barclays, as Administrative Agent (as defined therein), Ditech and U.S. Bank National Association.

55. Second Amendment to the Master Securities Forward Transaction Agreement, dated as of the Closing Date, between Barclays Capital Inc. and Ditech.

56. Second Amendment to the Master Securities Forward Transaction Agreement, dated as of the Closing Date, between Nomura Securities International, Inc. and Ditech.

**ACTION BY**
**WRITTEN CONSENT OF**
**THE GOVERNING BODIES OF**

DF INSURANCE AGENCY LLC
DITECH FINANCIAL LLC
GREEN TREE CREDIT LLC
GREEN TREE CREDIT SOLUTIONS LLC
GREEN TREE INSURANCE AGENCY OF NEVADA, INC.
GREEN TREE INVESTMENT HOLDINGS III LLC
GREEN TREE SERVICING CORP.
MARIX SERVICING LLC
MORTGAGE ASSET SYSTEMS, LLC
REO MANAGEMENT SOLUTIONS, LLC
REVERSE MORTGAGE SOLUTIONS, INC.
WALTER MANAGEMENT HOLDING COMPANY LLC
WALTER REVERSE ACQUISITION LLC

February 10, 2019

The required members of the board of directors, the sole member, the managing member, the sole manager or the sole general partner, as the case may be (as applicable, the "Governing Body"), of each of the entities referenced above (each, a "Company" and collectively, the "Companies"), do hereby consent to, adopt, and approve, by written consent in accordance with applicable law, the following resolutions and every action effected thereby:

**WHEREAS**, each Company is a direct or indirect wholly-owned subsidiary of Ditech Holding Corporation (the "Parent");

**WHEREAS,** Reverse Mortgage Solutions, Inc. is the sole "member" (as such term is used in the Delaware Limited Liability Company Act, 6 Del.C. § 18-101, et seq. (the "DLLC Act")) (the "Sole Member") of RMS REO CS, LLC, RMS REO BRC, LLC, RMS REO BRC II, LLC and RMS 2018-09, LLC (each a "Single Member LLC" and, collectively, the "Single Member LLCs");

**WHEREAS**, the Board of Directors of the Parent and the Governing Body of the Company previously approved the form, terms and provisions of, and the execution, delivery, and performance of, and, on February 8, 2019, the Company entered into, the restructuring support agreement (the "RSA") with an ad hoc group of lenders (the "Term Loan Lenders") holding more than 75% of the aggregate total principal amount of the Parent's senior secured first lien term loan, borrowed pursuant to the Second Amended and Restated Credit Agreement, dated as of February 9, 2018 (as amended, supplemented or otherwise modified, the "Credit Agreement") establishing the Term Loan Lenders' support for a prearranged chapter 11 plan of reorganization;

**WHEREAS**, the Board of Directors of the Parent and, if applicable, the Governing Body of the Company, previously approved, and on February 8, 2019, the Parent and the applicable Companies entered into, the Commitment Letter (the "Commitment Letter"), by and among the Parent as Guarantor, its wholly-owned direct subsidiaries Reverse Mortgage Solutions, Inc. ("RMS") and Ditech Financial LLC ("Ditech") as Sellers, Barclays Bank PLC ("Barclays") as Administrative Agent

and as Buyer and Nomura Corporate Funding Americas, LLC ("Nomura") as Buyer (together with Barclays in its capacity as Buyer, the "Buyers"), pursuant to which the Buyers committed to provide new debtor-in-possession financing in an amount of up to $1.9 billion on terms and subject to conditions set forth in the Commitment Letter and the term sheet attached thereto;

WHEREAS, the Governing Body of the Company has reviewed and had the opportunity to ask questions about the materials attached hereto and the impact of the foregoing on the Company's business; and

WHEREAS, the Governing Body has considered and determined that taking the applicable actions set forth below are in the best interests of the Company and, therefore, desires to approve the following resolutions.

## Commencement of Chapter 11 Cases

RESOLVED, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest and the Governing Body approves and authorizes the filing of petitions by the Company seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and be it further

RESOLVED, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest that the Company and its advisors prepare, finalize and file, as appropriate, the prearranged chapter 11 plan of reorganization (the "Plan") and related disclosure statement (the "Disclosure Statement") consistent with the terms of the RSA;

RESOLVED, that any officer of the Company (each, an "Authorized Officer"), in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed to execute and file in the name and on behalf of the Company all petitions, schedules, motions, lists, applications, pleadings, and other papers in the Bankruptcy Court, and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers and other professionals, and to take and perform any and all further acts and deeds which such Authorized Officer deems necessary, proper, or desirable in connection with the chapter 11 cases (the "Chapter 11 Cases"), the Plan and the Disclosure Statement, including, without limitation, negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments in connection with the transactions and professional retentions set forth in this resolution, with a view to the successful prosecution of the Chapter 11 Cases; and be it further

## Retention of Advisors

RESOLVED, that in connection with the Chapter 11 Cases, any Authorized Officer, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers and other professionals, on behalf of the Company, which such Authorized Officer deems necessary, appropriate or advisable in connection with, or in furtherance of, the Chapter 11 Cases, with a view to the successful prosecution of the Chapter

11 Cases (such acts to be conclusive evidence that such Authorized Officer deemed the same to meet such standard); and be it further

**RESOLVED**, that the firm of Houlihan Lokey Capital, Inc., located at 10250 Constellation Blvd., 5th Floor, Los Angeles, California 90067, is hereby retained as investment banker for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the law firm of Weil, Gotshal & Manges LLP, located at 767 Fifth Avenue, New York, NY 10153, is hereby retained as counsel for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of AlixPartners, located at 909 Third Avenue, New York, New York 10022, is hereby retained as financial advisor for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval, and that the Company's prior engagement of AlixPartners is hereby ratified in all respects; and be it further

**RESOLVED**, that the firm of Epiq Corporate Restructuring, LLC, located at 777 Third Avenue, 12th Floor, New York, New York 10017, is hereby retained as claims, noticing, and solicitation agent and administrative advisor for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

## Specified Consent with Respect to Sole Member

**RESOLVED**, that the written consent of the Sole Member provided herein to file a petition seeking relief under the Bankruptcy Code shall, to the maximum extent permitted by law, constitute a "written consent" for purposes of §18-304 of the DLLC Act; and be it further

**RESOLVED**, that it is desirable and in the best interests of the Sole Member, its creditors, and other parties in interest that the Sole Member shall not cease to be a "member" (as such term is used in the DLLC Act) of any Single Member LLC as a result of the Chapter 11 Cases or upon the happening of any other event specified in §18-304 of the DLLC Act; and be it further

## General

**RESOLVED,** that any Authorized Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, perform, and approve any necessary public disclosures and filings related to, and such other documents, agreements, instruments and certificates as may be required by the Chapter 11 Cases or retention of advisors and to take such other actions that in the judgment of the Authorized Officer shall be or become necessary, proper or desirable in connection therewith; and be it further

**RESOLVED**, that any actions taken by any Authorized Officer, for or on behalf of the Company, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof be, and they hereby are, authorized, adopted, approved, confirmed and ratified in all respects as the actions and deeds of the Company.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the undersigned, being the managing member of the entities listed under "Group 1" on <u>Schedule I</u> has executed this written consent as of the date first set forth above.

**DITECH HOLDING CORPORATION**


 /s/ Kimberly Perez                                          
Name: Kimberly Perez
Title:  SVP & Chief Accounting Officer

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the board of directors of the entity listed under "Group 2" on <u>Schedule I</u> have executed this unanimous written consent as of the date first set forth above.

/s/ Jeffrey Baker
Jeffrey Baker

/s/ Alan Clark
Alan Clark

**IN WITNESS WHEREOF**, the undersigned, being the sole member of the board of directors of the entity listed under "Group 3" on <u>Schedule I</u> has executed this unanimous written consent as of the date first set forth above.

/s/ Laura Reichel
Laura Reichel

**IN WITNESS WHEREOF**, the undersigned, being the sole member or managing member, as applicable, of the entities listed under "Group 4" on <u>Schedule I</u>, has executed this written consent as of the date first set forth above.

**GREEN TREE CREDIT SOLUTIONS LLC,**

 /s/ Kimberly Perez_____
Name: Kimberly Perez
Title:  SVP & Chief Accounting Officer

**IN WITNESS WHEREOF**, the undersigned, being the managing member of each entity listed under "Group 5" on <u>Schedule I</u>, has executed this written consent as of the date first set forth above.

**REVERSE MORTGAGE SOLUTIONS, INC.**

/s/ Jeanetta Brown
Name: Jeanetta Brown
Title:  Vice President

**IN WITNESS WHEREOF**, the undersigned, being the managing member of the entity listed under "Group 6" on <u>Schedule I</u>, has executed this written consent as of the date first set forth above.

**WALTER MANAGEMENT HOLDING COMPANY LLC**

 /s/ Kimberly Perez_____
Name: Kimberly Perez
Title:  SVP & Chief Accounting Officer

**IN WITNESS WHEREOF**, the undersigned, being the managing member of the entity listed under "Group 7" on <u>Schedule I</u>, has executed this written consent as of the date first set forth above.


**GREEN TREE SERVICING CORP.**


 /s/ Kimberly Perez
Name: Kimberly Perez
Title:  SVP & Chief Accounting Officer

**Schedule I**

***Group 1***

Walter Reverse Acquisition LLC, a Delaware limited liability company

Green Tree Credit Solutions LLC, a Delaware limited liability company

Marix Servicing LLC, a Delaware limited liability company

***Group 2***

Reverse Mortgage Solutions, Inc., a Delaware corporation

***Group 3***

Green Tree Insurance Agency of Nevada, Inc., a Nevada corporation

Green Tree Servicing Corp., a Delaware corporation

***Group 4***

Walter Management Holding Company LLC, a Delaware limited liability company

DF Insurance Agency LLC, a Delaware limited liability company

Green Tree Investment Holdings III LLC, a Delaware limited liability company

***Group 5***

Mortgage Asset Systems, LLC, a Delaware limited liability company

REO Management Solutions, LLC, a Delaware limited liability company

***Group 6***

Green Tree Credit LLC, a New York limited liability company

***Group 7***

Ditech Financial LLC, a Delaware limited liability company

**ACTION BY**
**WRITTEN CONSENT OF**
**THE GOVERNING BODIES OF**

DITECH FINANCIAL LLC
REVERSE MORTGAGE SOLUTIONS, INC.
RMS REO CS, LLC
RMS REO BRC, LLC
RMS REO BRC II, LLC

February 10, 2019

The required members of the board of directors, the sole member, the managing member, the sole manager or the sole general partner, as the case may be (as applicable, the "Governing Body"), of each of the entities referenced above (each, a "Company" and collectively, the "Companies"), do hereby consent to, adopt, and approve, by written consent in accordance with applicable law, the following resolutions and every action effected thereby:

WHEREAS, the Company is a direct or indirect wholly-owned subsidiary of Ditech Holding Corporation (the "Parent");

WHEREAS, the Board of Directors of the Parent and the Governing Body of each of Reverse Mortgage Solutions, Inc. ("RMS") and Ditech Financial LLC ("Ditech") previously approved the form, terms and provisions of, and the execution, delivery, and performance of, and, on February 8, 2019, the Parent and certain of its subsidiaries, including RMS and Ditech, entered into, the restructuring support agreement (the "RSA") with an ad hoc group of lenders (the "Term Loan Lenders") holding more than 75% of the aggregate total principal amount of the Parent's senior secured first lien term loan, borrowed pursuant to the Second Amended and Restated Credit Agreement, dated as of February 9, 2018 (as amended, supplemented or otherwise modified, the "Credit Agreement") establishing the Term Loan Lenders' support for a prearranged chapter 11 plan of reorganization;

WHEREAS, the Board of Directors of the Parent and the Governing Body of each of RMS and Ditech previously approved, and on February 8, 2019, the Parent, RMS and Ditech entered into, the Commitment Letter (the "Commitment Letter"), by and among the Parent as Guarantor, its wholly-owned direct subsidiaries Reverse Mortgage Solutions, Inc. ("RMS") and Ditech Financial LLC ("Ditech") as Sellers, Barclays Bank PLC ("Barclays") as Administrative Agent and as Buyer and Nomura Corporate Funding Americas, LLC ("Nomura") as Buyer (together with Barclays in its capacity as Buyer, the "Buyers"), pursuant to which the Buyers committed to provide new debtor-in-possession financing in an amount of up to $1.9 billion on terms and subject to conditions set forth in the Commitment Letter and the term sheet attached thereto;

WHEREAS, the Governing Body of the Company has reviewed and had the opportunity to ask questions about the materials attached hereto and the impact of the foregoing on the Company's business; and

**WHEREAS**, the Governing Body has considered and determined that taking the applicable actions set forth below are in the best interests of the Company and, therefore, desires to approve the following resolutions.

## Debtor-in-Possession Financing

**RESOLVED**, that as previously authorized and agreed to by Ditech and RMS in connection with the Commitment Letter, it is in the best interest of Ditech, RMS, RMS REO CS, LLC ("RMS REO CS"), RMS REO BRC, LLC ("RMS REO BRC") and RMS REO BRC II, LLC ("RMS REO BRC II") to engage in, and the Parent, Ditech, RMS, RMS REO CS, RMS REO BRC and RMS REO BRC II will obtain benefits from, the financing transactions contemplated by the agreements listed on Schedule A hereto and any and all of the other agreements, including, without limitation, any other guarantees, certificates, documents and instruments authorized, executed, delivered, reaffirmed, verified and/or filed in connection with the Debtor-in-Possession Financing (as defined below) (together with the transaction documents listed on Schedule A, collectively, the "DIP Financing Documents"), which, subject to the approval of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in connection with the chapter 11 cases of the Parent, RMS, Ditech and certain other subsidiaries of the Parent, will provide the Parent, Ditech, RMS and RMS REO BRC II up to $1.9 billion in available warehouse financing, which is necessary and appropriate for the conduct, promotion and attainment of the business of the Parent and its subsidiaries, including Ditech, RMS and RMS REO BRC II (the "Debtor-in-Possession Financing") (capitalized terms used in this section with respect to Debtor-in-Possession Financing and not otherwise defined herein shall have the meanings ascribed to such terms in the Commitment Letter or the term sheet attached thereto); and be it further

**RESOLVED**, that the Company's performance of its obligations under the DIP Financing Documents, including the borrowings and guarantees contemplated thereunder, are hereby, in all respects confirmed, ratified and approved; and be it further

**RESOLVED**, that any Authorized Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to negotiate and approve the terms, provisions of and performance of, and to prepare, execute and deliver the DIP Financing Documents, on substantially the same terms and conditions presented to the Company, in the name and on behalf of the Company under its corporate seal or otherwise, and such other documents, agreements, instruments and certificates as may be required by the Administrative Agent or required by the DIP Financing Documents; and be it further

**RESOLVED**, that any Authorized Officer is hereby authorized, as part of the adequate protection to be provided to the lenders and administrative agent under the Credit Agreement, to grant replacement security interests in, and replacement liens on, any and all property of the Company as collateral pursuant to the Bankruptcy Court's orders to secure all of the obligations and liabilities of the Company thereunder, and to authorize, execute, verify, file and/or deliver to the administrative agent, on behalf of the Company, all agreements, documents and instruments required by the lenders or the administrative agent under the Credit Agreement in connection with the foregoing; and be it further

**RESOLVED**, that any Authorized Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to take all such further actions including, without limitation, to pay all fees and expenses, in accordance with the terms of the DIP Financing Documents,

2

which shall, in such Authorized Officer's judgment, be necessary, proper or advisable to perform the Company's obligations under or in connection with the DIP Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it further

> **RESOLVED**, that any Authorized Officer is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of any of the DIP Financing Documents which shall, in such Authorized Officer's sole judgment, be necessary, proper or advisable; and be it further

**<u>General</u>**

> **RESOLVED,** that any Authorized Officer is hereby authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, perform and approve any necessary public disclosures and filings related to, such documents, agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities and certificates as may be required in connection with the DIP Financing Documents and Debtor-in-Possession Financing, and to take such other actions that in the judgment of the Authorized Officer shall be or become necessary, proper or desirable in connection therewith; and be it further

> **RESOLVED**, that any actions taken by any Authorized Officer, for or on behalf of the Company, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof be, and they hereby are, authorized, adopted, approved, confirmed and ratified in all respects as the actions and deeds of the Company.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the undersigned, being all of the members of the board of directors of **Reverse Mortgage Solutions, Inc.**, a Delaware corporation, have executed this unanimous written consent as of the date first set forth above.

/s/ Jeffrey Baker
Jeffrey Baker

/s/ Alan Clark
Alan Clark

**IN WITNESS WHEREOF**, the undersigned, being the sole member of each entity listed below, has executed this written consent as of the date first set forth above.

**RMS REO CS, LLC**

**RMS REO BRC, LLC**

**RMS REO BRC II, LLC**


**REVERSE MORTGAGE SOLUTIONS, INC.**
as Member

/s/ Jeanetta Brown
Name: Jeanetta Brown
Title:  Vice President

IN WITNESS WHEREOF, the undersigned, being the managing member of **Ditech Financial LLC**, a Delaware limited liability company, has executed this written consent as of the date first set forth above.

**GREEN TREE SERVICING CORP.**

  /s/ Kimberly Perez
Name: Kimberly Perez
Title:  SVP & Chief Accounting Officer

### Schedule A

1. Master Refinancing Agreement, dated as of the Closing Date, by and among Barclays, as administrative agent for the Buyers (as defined therein) and other Secured Parties (as defined therein), Barclays and Nomura, each as a Buyer (as defined therein), Barclays Capital Inc. and Nomura Securities International, Inc., each as an MSFTA Counterparty (as defined therein), Ditech and Reverse Mortgage Solutions, Inc., each as a Seller (as defined therein) and RMS REO BRC II, LLC, as REO Subsidiary (as defined therein) (the "Omnibus Agreement").

2. Master DIP Fee Letter, dated as of the Closing Date, among Barclays, as administrative agent, Barclays and Nomura, as Committed Buyers (as defined therein), Ditech, RMS and Ditech Holding Corporation.

3. Master DIP Guaranty, dated as of the Closing Date, made by Guarantor in favor of Barclays, as Administrative Agent, for the benefit of Buyers and the other Buyer Parties (as defined therein).

4. Margin, Setoff and Netting Agreement, dated as of the Closing Date, among Barclays, as Administrative Agent, Barclays Capital, Inc., Nomura Securities International, Inc., Nomura, Ditech, RMS, and RMS REO BRC II, LLC and acknowledged and agreed to by Ditech Holding Corporation.

5. Master Administration Agreement, dated as of the Closing Date, among Barclays, as Administrative Agent for the Buyers and other Secured Parties (as defined therein), Barclays and Nomura, each as a Buyer (as defined therein), Barclays Capital Inc. and Nomura Securities International, Inc., each as a MSFTA Counterparty (as defined therein), Ditech and RMS, each as a Seller (as defined therein), and RMS REO BRC II, LLC as REO Subsidiary (as defined therein).

6. Amended and Restated Master Repurchase Agreement, dated as of the Closing Date, by and among Barclays and Nomura, as Purchasers (as defined therein), Barclays, as Agent (as defined therein), RMS and RMS REO BRC II, LLC.

7. Amended and Restated Pricing Side Letter, dated as of the Closing Date, among Barclays, as Purchaser and Agent, Nomura, as Purchaser, RMS and RMS REO BRC II, LLC.

8. Assignment Agreement, dated as of the Closing Date, between RMS REO CS, LLC and RMS.

9. Assignment Agreement, dated as of the Closing Date, between RMS REO BRC, LLC and RMS.

10. Assignment Agreement, dated as of the Closing Date, between RMS REO BRC II, LLC and RMS.

11. Amended and Restated Custodial Agreement, dated as of the Closing Date, by and among RMS REO BRC II, LLC (the "REO Subsidiary"), RMS, Deutsche Bank National Trust Company, as custodian for Purchasers (as defined therein) and for the REO Subsidiary, Barclays and Nomura, as Purchasers (as defined therein), and Barclays, as Agent (as defined therein).

12. Amended and Restated Deposit Account Control Agreement, dated as of the Closing Date, by and among RMS, Barclays, as Agent (as defined therein), and Wells Fargo Bank, National Association.

13. Amendment No. 1 to the Limited Liability Company Agreement of RMS REO BRC II, LLC, dated as of the Closing Date, entered into by RMS, as the sole member, RMS REO BRC II, LLC, and consented to by Barclays, as Agent.

14. Indenture, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Indenture"), by and among Ditech Agency Advance Trust, as issuer (the "Agency Facility Issuer"), Wells Fargo Bank, N.A. ("Wells Fargo"), as indenture trustee (in such capacity, the "Agency Facility Indenture Trustee"), calculation agent, paying agent and securities intermediary, Ditech, as administrator (in such capacity, the "Agency Facility Administrator") and as servicer (in such capacity, the "Agency Facility Servicer") and Barclays, as administrative agent (in such capacity, the "Agency Facility Administrative Agent") (successor to Credit Suisse First Boston Mortgage Capital LLC, as initial administrative agent).

15. Series 2019-VF1 Indenture Supplement to Agency Facility Indenture, dated as of the Closing Date, by and among the Agency Facility Issuer, the Agency Facility Indenture Trustee (as indenture trustee, calculation agent, paying agent and securities intermediary), the Agency Facility Administrator, the Agency Facility Servicer and the Agency Facility Administrative Agent.

16. Receivables Sale Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Receivables Sale Agreement"), by and among the Agency Facility Servicer, as servicer and as the receivables seller (in such capacity, the "Agency Facility Receivables Seller"), Ditech Agency Advance Depositor LLC, as depositor (the "Agency Facility Depositor") and the Company, as guarantor.

17. Amendment No.1 to the Agency Facility Receivables Sale Agreement, dated as of the Closing Date, by and among the Agency Facility Servicer, the Agency Facility Receivables Seller, the Agency Facility Depositor and the Company, as guarantor.

18. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Depositor and the Agency Facility Receivables Seller.

19. Receivables Pooling Agreement, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Depositor and the Agency Facility Issuer.

20. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Depositor and the Agency Facility Issuer.

21. Administration Agreement, dated as of February 9, 2018 and effective as of February 12, 2018, by and between the Agency Facility Issuer and the Agency Facility Administrator.

22. Acknowledgment Agreement with Respect to Servicing Advance Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Acknowledgment Agreement"), by and among the Agency Facility Issuer, the Agency Facility Depositor, the Agency Facility Servicer, the Agency Facility Indenture Trustee, Fannie Mae and the Agency Facility Administrative Agent.

23. Amendment No. 1 to the Agency Facility Acknowledgment Agreement, dated as of April 20, 2018, by and among the Agency Facility Issuer, the Agency Facility Depositor, the Agency Facility Servicer, the Agency Facility Indenture Trustee, Fannie Mae and the Agency Facility Administrative Agent.

24. Amendment No. 2 to the Agency Facility Acknowledgment Agreement, dated as of the Closing Date, by and among the Agency Facility Issuer, the Agency Facility Depositor, the Agency Facility Servicer, the Agency Facility Indenture Trustee, Fannie Mae and the Agency Facility Administrative Agent.

25. Series 2019-VF1 Variable Funding Note Purchase Agreement, dated as of the Closing Date, (the "Agency Facility Note Purchase Agreement"), by and among Ditech, as the Agency Facility Servicer, the Agency Facility Administrator and the Agency Facility Receivables Seller, the Agency Facility Depositor, the Agency Facility Issuer, the Administrative Agent, and Barclays, as a Purchaser Agent ("Agency Facility Purchaser").

26. Ditech Agency Advance Trust Advance Receivables Backed Note, Series 2019-VF1 Note, Number 1 (the "Agency Facility Note"), dated as of the Closing Date, in the name of the Agency Facility Purchaser.

27. Amended and Restated Trust Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "Agency Facility Trust Agreement"), by and among the Agency Facility Depositor, Wilmington Trust, National Association, as the owner trustee (in such capacity, the "Agency Facility Owner Trustee"), and the Agency Facility Administrator.

28. Amendment No.1 to the Agency Facility Trust Agreement, dated as of the Closing Date, by and among the Agency Facility Depositor, Wilmington Trust, National Association, the Agency Facility Owner Trustee and the Agency Facility Administrator.

29. Amended and Restated Limited Liability Company Agreement of the Agency Facility Depositor (the "Agency Facility Depositor LLC Agreement"), dated as of February 9, 2018 and effective as of February 12, 2018, by and among Ditech, as the sole economic member of the Agency Facility Depositor and Albert Fioravanti, as the Special Member and Independent Manager of the Agency Facility Depositor.

30. Amendment No. 1 to the Agency Facility Depositor LLC Agreement, dated as of the Closing Date, made by Ditech, as the sole economic member of the Agency Facility Depositor and consented to by Albert Fioravanti, as the Special Member and Independent Manager of the Agency Facility Depositor and Barclays, as sole noteholder.

31. Indenture, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Indenture"), by and among Ditech PLS Advance Trust II, as issuer (the "PLS Facility Issuer"), Wells Fargo Bank, as indenture trustee (in such capacity, the "PLS Facility Indenture Trustee"), calculation agent, paying agent and securities intermediary, Ditech, as administrator (in such capacity, the "PLS Facility Administrator") and as servicer (in such capacity, the "PLS Facility Servicer") and Barclays, as administrative agent (in such capacity, the "PLS Facility Administrative Agent") (successor to Credit Suisse First Boston Mortgage Capital LLC, as initial administrative agent).

32. Series 2019-VF1 Indenture Supplement to PLS Facility Indenture, dated as of the Closing Date (the "PLS Facility Indenture Supplement"), by and among the PLS Facility Issuer, the PLS Facility Indenture Trustee (as indenture trustee, calculation agent, paying agent and securities intermediary), the PLS Facility Administrator, the PLS Facility Servicer and the PLS Facility Administrative Agent.

33. Receivables Sale Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Receivables Sale Agreement"), by and among the PLS Facility Servicer, as servicer and as the receivables seller (in such capacity, the "PLS Facility Receivables Seller"), Ditech PLS Advance Depositor LLC, as depositor (the "PLS Facility Depositor") and the Company, as guarantor.

34. Amendment No.1 to the PLS Facility Receivables Sale Agreement, dated as of the Closing Date, by and among the PLS Facility Servicer, the PLS Facility Receivables Seller, the PLS Facility Depositor and the Company, as guarantor ("PLS Facility Receivables Sale Agreement Amendment").

35. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (the "PLS Facility Assignment of Receivables"), by and between the PLS Facility Depositor and the PLS Facility Receivables Seller.

36. Receivables Pooling Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (the "PLS Facility Receivables Pooling Agreement"), by and between the PLS Facility Depositor and PLS Facility Issuer.

37. Assignment of Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (the "Depositor PLS Facility Assignment of Receivables"), by and between the PLS Facility Depositor and the PLS Facility Issuer.

38. Administration Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (the "PLS Facility Administration Agreement"), by and between the PLS Facility Issuer and the PLS Facility Administrator.

39. Acknowledgment Agreement with Respect to Servicing Advance Receivables, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Acknowledgment Agreement"), by and among the PLS Facility Issuer, the PLS Facility Depositor, the PLS Facility Servicer, the PLS Facility Indenture Trustee, Fannie Mae and the PLS Facility Administrative Agent.

40. Series 2019-VF1 Variable Funding Note Purchase Agreement, dated as of the Closing Date, and effective as of the Effective Date (the "PLS Facility Note Purchase Agreement"), by and among Ditech, as the PLS Facility Servicer, the PLS Facility Administrator and the PLS Facility Receivables Seller, the PLS Facility Depositor, the PLS Facility Issuer, the Administrative Agent, and Barclays, as a Purchaser Agent ("PLS Facility Purchaser").

41. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class A-VF1 Note Number 1 (the "PLS Facility Note, Class A"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

42. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class B-VF1 Note Number 1 (the "PLS Facility Note, Class B"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

43. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class C-VF1 Note Number 1 (the "PLS Facility Note, Class C"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

44. Ditech PLS Advance Trust II Advance Receivables Backed Note, Series 2019 Class D-VF1 Note Number 1 (the "PLS Facility Note, Class D"), dated as of the Closing Date, in the name of the PLS Facility Purchaser.

45. Amended and Restated Trust Agreement, dated as of February 9, 2018 and effective as of February 12, 2018 (as amended, restated, supplemented or otherwise modified as of the date hereof, the "PLS Facility Trust Agreement"), by and among the PLS Facility Depositor, Wilmington Trust, National Association, as the owner trustee (in such capacity, the "PLS Facility Owner Trustee"), and the PLS Facility Administrator.

46. Amendment No.1 to the PLS Facility Trust Agreement, dated as of the Closing Date, by and among the Agency Facility Depositor, the Agency Facility Owner Trustee and the Agency Facility Administrator.

47. Amended and Restated Limited Liability Company Agreement of the PLS Facility Depositor (the "PLS Facility Depositor LLC Agreement"), dated as of February 9, 2018 and effective as of February 12, 2018, by and among Ditech, as the sole economic member of the PLS Facility Depositor and Albert Fioravanti, as the Special Member and Independent Manager of the PLS Facility Depositor.

48. Amendment No. 1 to the PLS Facility Depositor LLC Agreement, dated as of the Closing Date, made by Ditech, as the sole economic member of the PLS Facility Depositor and consented to by Albert Fioravanti, as the Special Member and Independent Manager of the PLS Facility Depositor and Barclays, as sole noteholder.

49. Pledge Agreement, dated as of the Closing Date, made by the Ditech in favor of Barclays.

50. Master Repurchase Agreement, dated as of the Closing Date, by and among Barclays, as Administrative Agent on behalf of Buyers (as defined therein), Barclays and Nomura, as Buyers (as defined therein), other Buyers party thereto from time to time, and Ditech.

51. Pricing Side Letter, dated the Closing Date, among Barclays, as Administrative Agent for the benefit of Buyers (as defined therein), Barclays and Nomura, as Committed Buyers (as defined therein), and Ditech.

52. Power of Attorney, dated as of the Closing Date, to be entered into by Ditech.

53. Custodial and Disbursement Agreement, dated as of the Closing Date, by and among Barclays and Nomura, as Buyers (as defined therein), Ditech, Barclays, as agent of the Buyers, and Wells Fargo Bank, N.A.

54. Amended and Restated Deposit Account Control Agreement, dated as of the Closing Date, by and among Barclays, as Administrative Agent (as defined therein), Ditech and U.S. Bank National Association.

55. Second Amendment to the Master Securities Forward Transaction Agreement, dated as of the Closing Date, between Barclays Capital Inc. and Ditech.

56. Second Amendment to the Master Securities Forward Transaction Agreement, dated as of the Closing Date, between Nomura Securities International, Inc. and Ditech.

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor name: __DF Insurance Agency LLC__

United States Bankruptcy Court for the: __Southern__ District of __New York__
(State)

Case number (*If known*): _____

☐ Check if this is an amended filing

<u>Official Form 204</u>

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 40 Largest Unsecured Claims and Are Not Insiders

**12/15**

**A list of creditors holding the 40 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 40 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | ISGN Solutions Inc. Attn.: E. Rock Primas 2330 Commerce Park Drive, NE, Suite 2 Palm Bay, Florida 32905 | Attn.: E. Rock Primas Phone: (609) 932-4712 Email: rock.primas@isgnsolutions.com | Trade Debt | | | | $1,531,484.00 |
| 2 | Black Knight Tech Solutions Attn.: Darlene Ledet 601 Riverside Avenue Jacksonville, FL 32204 | Attn.: Darlene Ledet Phone: (904) 854-3153 Email: darlene.ledet@bkfs.com | Trade Debt | | | | $1,458,204.00 |
| 3 | Servicelink Attn.: Joe Greve 9600 Reserve Run Brecksville, Ohio 15108 | Attn.: Joe Greve Phone: (216) 374-1888 Email: joe.greve@svclnk.com | Trade Debt | | | | $1,222,945.00 |
| 4 | Corelogic Tax Services LLC Attn.: Tom Blauvelt 4 First American Way Santa Ana, California 92707 | Attn.: Tom Blauvelt Phone: (512) 977-3716 Email: tblauvelt@corelogic.com | Trade Debt | | | | $1,155,282.00 |
| 5 | Safeguard Properties Mgmt. LLC Attn.: Gregory Sharp 7887 Safeguard Cir. Valley View, Ohio 44125 | Attn.: Gregory Sharp Phone: (216) 739-2900 Email: gregory.sharp@safeguardproperties.com | Trade Debt | | | | $1,150,138.00 |
| 6 | Tata Consultancy Services Ltd. Attn.: Prashant Panghal 379 Thornall Street Edison, New Jersey 08837 | Attn.: Prashant Panghal Phone: (732) 986-6921 Email: prashant1.p@tcs.com | Trade Debt | | | | $1,135,384.00 |
| 7 | Cognizant Technology Solutions Attn.: Janine Lj Durham 2512 Dunlap Avenue Phoenix, Arizona 32905 | Attn.: Janine Lj Durham Phone: (602) 315-0481 Email: janine.durham@cognizant.com | Trade Debt | | | | $1,023,481.00 |
| 8 | Corelogic Information Solutions Attn.: Tom Blauvelt 4 First American Way Santa Ana, California 92707 | Attn.: Tom Blauvelt Phone: (512) 977-3716 Email: tblauvelt@corelogic.com | Trade Debt | | | | $800,585.00 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9  Black Knight Financial Services Attn.: Darlene Ledet 601 Riverside Avenue Jacksonville, Florida 32204 | Attn.: Darlene Ledet Phone: (904) 854-3153 Email: darlene.ledet@bkfs.com | Trade Debt | | | | $586,915.00 |
| 10  Verizon Business Attn.: Lona Gruebele 22001 Loudoun County Pkwy Ashburn, Virgina 20147 | Attn.: Lona Gruebele Phone: (612) 805-1034 Email: lona.j.gruebele@verizon.com | Trade Debt | | | | $555,663.00 |
| 11  Nationwide Title Clearing Inc. Attn.: Debbie Lastoria 2100 Alt 19 North Palm Harbor, Florida 34683 | Attn.: Debbie Lastoria Phone: (727) 771-4000 Email: debbie_lastoria@nwtc.com | Trade Debt | | | | $554,418.00 |
| 12  NCP Solutions LLC Attn.: Tom Hart 5200 East Lake Boulevard Birmingham, Alabama 35217 | Attn.: Tom Hart Phone: (205) 421-7254 Email: thart@ncpsolutions.com | Trade Debt | | | | $492,500.00 |
| 13  Pegasystems Inc. Attn.: Kirk Faustman One Rogers Street Cambridge, Massachusetts 02142 | Attn.: Kirk Faustman Phone: (617) 777-3229 Email: kirk.faustman@pega.com | Trade Debt | | | | $480,180.00 |
| 14  Padgett Law Group Attn.: Timothy D. Padgett 6267 Old Water Oak Road, Suite 203 Tallahassee, Florida 32312 | Attn.: Timothy D. Padgett Phone: (850) 422-2520 Email: accounting@padgettlaw.net | Professional Services | | | | $471,337.00 |
| 15  McCalla Raymer Leibert Pierce LLC Attn.: Michael Allgood 1544 Old Alabama Road Roswell, Georgia 30076 | Attn.: Michael Allgood Phone: (770) 643-7202 Email: michael.allgood@mccalla.com | Trade Debt | | | | $462,992.00 |
| 16  RAS Crane LLC Attn.: John Crane 10700 Abbott's Bridge Road; Suite 170 Duluth, Georgia 30097 | Attn.: John Crane Phone: (972) 757-1486 Email: jcrane@rascrane.com | Professional Services | | | | $446,268.00 |
| 17  Locke Lord LLP Attn.: Lori Barton 2200 Ross Avenue, Suite 2800 Dallas, Texas 75201 | Attn.: Lori Barton Phone: (214) 740-8000 Email: lori.barton@lockelord.com | Professional Services | | | | $443,666.00 |
| 18  Ellie Mae Inc. Attn.: John Coppa 4420 Rosewood Drive, Suite 500 Pleasanton, CA 94588 | Attn.: John Coppa Phone: (925) 227-2060 Email: john.coppa@elliemae.com | Trade Debt | | | | $347,728.00 |
| 19  Quattro Direct LLC Attn.: Dan Lawler 200 Berwyn Park, Suite 310 Berwyn, Pennsylvania 19312 | Attn.: Dan Lawler Phone: (610) 993-0070 Email: dlawler@quattrodirect.com | Trade Debt | | | | $342,006.00 |
| 20  KML Law Group PC Attn.: Lisa Lee 701 Market Street, Suite 5000 Philadelphia, Pennsylvania 19106 | Attn.: Lisa Lee Phone: (215) 627-1322 Email: llee@kmllawgroup.com | Professional Services | | | | $332,535.00 |
| 21  Phelan Hallinan LLP Attn.: Jay Jones 1617 JFK Blvd., Suite 1400 Philadelphia, Pennsylvania 19103-1814 | Attn.: Jay Jones Phone: (215) 563-7000 Email: jay.jones@phelanhallinan.com | Professional Services | | | | $305,245.00 |
| 22  Insight Direct/ Datalink Attn.: Michael Schmidt 6820 South Harl Avenue Tempe, Arizona 85283 | Attn.: Michael Schmidt Phone: (651) 260-4017 Email: Michael.schmidt@insight.com | Trade Debt | | | | $300,279.00 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 23 | TCS America Attn.: Prashant Panghal 379 Thornall Street Edison, New Jersey 08837 | Attn.: Prashant Panghal Phone: (732) 986-6921 Email: prashant1.p@tcs.com | Trade Debt | | | | $297,383.00 |
| 24 | Robertson Anschutz & Schneid PL Attn.: Eric L. Bronfeld 6409 Congress Avenue, Suite 100 Boca Raton, Florida 33487 | Attn.: Eric L. Bronfeld Phone: (561) 241-6901 Email: arcollections@rasflaw.com | Professional Services | | | | $290,502.00 |
| 25 | American Bankers Insurance Attn.: Michelle Griffith 11222 Quail Roost Drive Miami, Florida 33157 | Attn.: Michelle Griffith Phone: (305) 253-2244 Email: michelle.griffith@assurant.com | Trade Debt | | | | $285,213.00 |
| 26 | Indecomm Holdings Inc. Attn.: Teddi Horan 205 Regency Executive Park Drive, Suite 500 Charlotte, North Carolina 28217 | Attn.: Teddi Horan Phone: (215) 962-7212 Email: teddi.horan@indecomm.net | Trade Debt | | | | $284,830.00 |
| 27 | Wells Fargo Bank N.A Attn.: Holly Monday 420 Montgomery Street San Francisco, California 94104 | Attn.: Holly Monday Phone: (703) 865-7740 Email: holly.monday@wellsfargo.com | Trade Debt | | | | $271,624.00 |
| 28 | Newcourse Communications Inc. Attn.: Valerie Griffin 5010 Linbar Dr., Ste. 100 Nashville, Tennessee 37211 | Attn.: Valerie Griffin Phone: (615) 921-6656 Email: valerie.griffin@newcoursecc.com | Trade Debt | | | | $270,000.00 |
| 29 | Xome Valuation Services Attn.: Allen Illgen 444 East Washington Street Indianapolis, Indiana 46204 | Attn.: Allen Illgen Phone: (612) 207-4012 Email: allen.illgen@assurant.com | Trade Debt | | | | $249,474.00 |
| 30 | Rean Cloud LLC Attn.: Rupa Vasireddy 2201 Cooperative Way #250 Herndon, Virginia 20171 | Attn.: Rupa Vasireddy Phone: (844) 377-7326 Email: rupa@reancloud.com | Trade Debt | | | | $240,667.00 |
| 31 | US Real Estate Services Inc. Attn.: Becca Nottberg 25520 Commerce Centre Drive; 1st Floor Lake Forest, California 92630 | Attn.: Becca Nottberg Phone: (949) 206-5353 Email: becca.nottberg@res.net | Trade Debt | | | | $233,284.00 |
| 32 | Operational Excellence Attn.: Tony Galluzzo 19712 MacArthur Blvd., Suite 110 Irvine, California 92612 | Attn.: Tony Galluzzo Phone: (949) 988-7229 Email: tgalluzzo@ca-usa.com | Trade Debt | | | | $231,378.00 |
| 33 | US Bank Trust NA Att.: Kirk Larson 300 East Delaware; 8th Floor Wilmington, Delaware 19809 | Attn.: Kirk Larson Phone: (651) 466-5666 Email: kirk.larson1@usbank.com | Trade Debt | | | | $230,809.00 |
| 34 | Wolfe & Wyman LLP Attn.: Stuart B. Wolfe 11811 N. Tatum, Suite 3031 Phoenix, Arizona 85028-1621 | Attn.: Stuart B. Wolfe Phone: (602) 953-0100 Email: sbwolfe@wolfewyman.com | Professional Services | | | | $228,398.00 |
| 35 | Five Brothers Mortgage Servs Attn.: Dawn Whiteaker 12220 E. 13 Mile Road; Suite 100 Warren, Missouri 48093 | Attn.: Dawn Whiteaker Phone: (586) 354-2017 Email: dawnrw@fiveonline.com | Trade Debt | | | | $224,947.00 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 36  Servicelink Default Title & Closing Attn.:  Joe Greve 1355 Cherrington Parkway Moon Township, Pennsylvania  15108 | Attn.:  Joe Greve Phone:  (216) 374-1888 Email:  joe.greve@svclnk.com | Trade Debt | | | | $218,298.00 |
| 37  Level 3 Communications LLC Attn.:  Timothy McGraw 600 W. Chicago Avnue, Suite 325 Chicago, Illinois  60654 | Attn.:  Timothy McGraw Phone:  (612) 392-7364 Email:  timothy.mcgraw@level3.com | Trade Debt | | | | $209,330.00 |
| 38  Xome Field Services LLC Attn.:  Allen Illgen 444 East Washington Street Indianapolis, Indiana  46204 | Attn.:  Allen Illgen Phone:  (612) 207-4012 Email:  allen.illgen@assurant.com | Trade Debt | | | | $206,077.00 |
| 39  RAS Boriskin LLC Attn.:  Sara Borskin 900 Merchants Concourse Westbury, New York  11590 | Attn.:  Sara Boriskin Phone:  (516) 280-7675 Email:  sboriskin@rasboriskin.com | Trade Debt | | | | $202,336.00 |
| 40  ISGN Corporation Attn.:  E. Rock Primas 2330 Commerce Park Drive, NE, Suite 2 Palm Bay, Florida  32905 | Attn.:  E. Rock Primas Phone:  (609) 932-4712 Email:  rock.primas@isgnsolutions.com | Trade Debt | | | | $200,850.00 |

<table>
<tr><td colspan="2" style="background:black;color:white"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor name:    __DF Insurance Agency LLC__

United States Bankruptcy Court  for the:  __Southern__  District of  __New York__
                                                                      (State)

Case number (*If known*):    _____

# Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors                12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☐   Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☐   Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☐   Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☐   Schedule H: Codebtors (Official Form 206H)

☐   Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐   Amended Schedule _____

☑   Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 40 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☐   Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __February 11, 2019__            X   /s/ Kimberly Perez _____
            MM /DD /YYYY                           Signature of individual signing on behalf of debtor

                                              _Kimberly Perez_____
                                              Printed name

                                              _Senior Vice President and Chief Accounting Officer_____
                                              Position or relationship to debtor

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
In re                                          :
                                               :        Chapter 11
                                               :
DF INSURANCE AGENCY LLC,                        :        Case No. 19– _____  (   )
                                               :
                 Debtor.                       :
------------------------------------------------------------- x
```

## LIST OF EQUITY HOLDERS[1]

        Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, the

following identifies all holders having a direct or indirect ownership interest of the above-

captioned debtor in possession (the "**Debtor**").

| Name and Last Known Address or Place of Business of Holder | Number of Securities/Kind of Interest |
|---|---|
| Green Tree Credit Solutions LLC<br>1100 Virginia Drive<br>Suite 100A<br>Fort Washington, PA 19034 | 100 % (Equity) |

---

[1] This list serves as the required disclosure by the Debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed are as of the date of commencement of the chapter 11 case.

**Fill in this information to identify the case:**

Debtor name: ___DF Insurance Agency LLC___

United States Bankruptcy Court  for the: __Southern__  District of __New York__
(State)

Case number (*If known*): _____

# Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors           12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐    Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☐    Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☐    Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☐    Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☐    Schedule H: Codebtors (Official Form 206H)

☐    Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐    Amended Schedule _____

☐    Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 40 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☑    Other document that requires a declaration  List of Equity Holders

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __February 11, 2019__                 **X**   /s/ Kimberly Perez
                MM / DD /YYYY                         Signature of individual signing on behalf of debtor

                                                      _Kimberly Perez_
                                                      Printed name

                                                      _Senior Vice President and Chief Accounting Officer_
                                                      Position or relationship to debtor

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                            :
In re                                       :        **Chapter 11**
                                            :
**DF INSURANCE AGENCY LLC,**                :        **Case No. 19-[_____] (___)**
                                            :
        **Debtor.**                         :
                                            :
**Fed. Tax Id. No. 30-0936918**             :
------------------------------------------------------------x

## CONSOLIDATED CORPORATE OWNERSHIP
## STATEMENT PURSUANT TO FED. R. BANKR. P. 1007 AND 7007.1

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure and Rule 1007-3 of the Local Bankruptcy Rules for the Southern District of New York, Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) ("**Ditech**") and its debtor affiliates, as debtors and debtors in possession in the above captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent:

1.      To the best of the Debtors' knowledge and belief, as of the date hereof (the "**Commencement Date**"), based solely on publicly available information, no entity directly or indirectly owns 10% or more of Ditech's common stock.

2.      To the best of the Debtors' knowledge and belief, as of the Commencement Date, based solely on publicly available information, Lion Point Master, LP owns approximately 38.1% of the convertible preferred shares of Ditech, First Pacific Advisors LLC owns approximately 11.1% of the convertible preferred shares of Ditech, and no other entity directly or indirectly owns 10% or more of Ditech's convertible preferred shares.

3.      Ditech has a one hundred percent (100%) ownership interest in the following entities:

        i.      Walter Reverse Acquisition LLC

    ii.    Green Tree Credit Solutions LLC

    iii.    Marix Servicing LLC

    iv.    Mid-State Capital, LLC[1]

    v.    Hanover SPC-A, Inc.*

    vi.    WIMC Real Estate Investment LLC*

4.    Walter Reverse Acquisition LLC has a one hundred percent (100%) ownership interest in Reverse Mortgage Solutions, Inc.

5.    Reverse Mortgage Solutions, Inc. has a one hundred percent (100%) ownership interest in the following entities:

    i.    Mortgage Asset Systems, LLC

    ii.    REO Management Solutions, LLC

    iii.    RMS REO BRC, LLC*

    iv.    RMS REO CS, LLC*

    v.    RMS REO BRC II, LLC*

    vi.    RMS 2018-09, LLC*

6.    Green Tree Credit Solutions LLC has a one hundred percent (100%) ownership interest in the following entities:

    i.    Green Tree Insurance Agency of Nevada, Inc.

    ii.    Walter Management Holding Company LLC

    iii.    DF Insurance Agency LLC

    iv.    Green Tree Investment Holdings III LLC

7.    Walter Management Holding Company LLC has a one hundred percent

---

[1] Mid-State Capital, LLC and each other entity noted with a (*) are not debtors in these chapter 11 cases.

(100%) ownership interest in the following entities:

     i.    Green Tree Credit LLC

     ii.    Green Tree Servicing Corp.

     iii.    Ditech Financial LLC

8.     Ditech Financial LLC has a one hundred percent (100%) ownership interest in the following entities:

     i.    Green Tree Advance Receivables III LLC*

     ii.    Ditech Agency Advance Depositor LLC*

     iii.    Ditech PLS Advance Depositor LLC*

9.     Attached hereto as **<u>Exhibit A</u>** is an organizational chart reflecting all of the ownership interests of the Debtors and their non-Debtor affiliates as of the Commencement Date.

## Exhibit A

**Organizational Chart**



Ditech Holding Corporation
Mid-State Capital, LLC
Walter Reverse Acquisition LLC
Hanover SPC-A, Inc.
Green Tree Credit Solutions LLC
Marix Servicing LLC
WIMC Real Estate Investment LLC
Reverse Mortgage Solutions, Inc.
Green Tree Insurance Agency of Nevada, Inc.
Walter Management Holding Company LLC
DF Insurance Agency LLC
Green Tree Investment Holdings III LLC
Mortgage Asset Systems, LLC
Green Tree Credit LLC
REO Management Solutions, LLC
Green Tree Servicing Corp.
(non-economic member of Ditech Financial LLC)
RMS REO BRC, LLC
Ditech Financial LLC
RMS REO CS, LLC
Green Tree Advance Receivables III LLC
RMS REO BRC II, LLC
Ditech Agency Advance Depositor LLC
RMS 2018-09, LLC
Ditech PLS Advance Depositor LLC

---

**Fill in this information to identify the case:**

Debtor name:   DF Insurance Agency LLC

United States Bankruptcy Court  for the:  Southern   District of  New York
                                                                              (State)

Case number (*If known*):   _____

---

## Official Form 202

### Declaration Under Penalty of Perjury for Non-Individual Debtors                    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐    Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☐    Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☐    Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☐    Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☐    Schedule H: Codebtors (Official Form 206H)

☐    Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐    Amended Schedule _____

☐    Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 40 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☑    Other document that requires a declaration Consolidated Corporate Ownership Statement

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  February 11, 2019        X   /s/ Kimberly Perez_____
             MM /DD /YYYY                  Signature of individual signing on behalf of debtor

                                           Kimberly Perez_____
                                           Printed name

                                           Senior Vice President and Chief Accounting Officer____
                                           Position or relationship to debtor